**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**WINSTON-SALEM DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **Cathy Suzanne Brookshire,** | ) | **Case No. 05-51091** |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| **BRYAN C. THOMPSON, Administrator** | ) | |
| **CTA of the Estate of Florence Cathleen** | ) | **Ad. Proc. No. 05-6022** |
| **Parker Brookshire, and KIM C.** | ) | |
| **BROOKSHIRE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **Cathy Suzanne Brookshire, and Edwin** | ) | |
| **H. Ferguson, Jr., Bankruptcy Trustee** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**ORDER AND OPINION GRANTING PLAINTIFFS'**
**MOTION FOR SUMMARY JUDGMENT**

This matter came before the Court on December 7, 2005, after notice to all parties in interest, in Winston-Salem, North Carolina, upon the Motion by the Plaintiff for Summary Judgment. Rebecca Smitherman and William W. Walker appeared on behalf of the Plaintiffs, and Bryan Gates appeared on behalf of Cathy Suzanne Brookshire, the Defendant and Debtor. Having considered the motion, as well as the memorandums of law, affidavits, and arguments of counsel, the court makes the following findings of fact and conclusions of law:

**BACKGROUND**

Plaintiff Bryan C. Thompson, is the duly appointed administrator of the Estate of Florence Cathleen Parker Brookshire, who died in Forsyth County on July 15, 2004. Plaintiff

Kim C. Brookshire ("Mr. Brookshire") is the son of Cathleen Brookshire ("Mrs. Brookshire").

Cathy Brookshire, the Debtor and Defendant in this proceeding, is the daughter of Mrs.

Brookshire. Mrs. Brookshire was a widow at the time of her death in 2004.

After Mrs. Brookshire's death, the Plaintiffs in this adversary proceeding commenced a

civil action in Forsyth County Superior Court against the Debtor (the "Civil Action"). In the

Civil Action, the Plaintiffs alleged that the Debtor breached her fiduciary duty to Mrs.

Brookshire and converted Mrs. Brookshire's property. A default judgment (the "State Court

Judgment") was entered against the Debtor in the Civil Action on January 13, 2005 after a

hearing on the matter. In the State Court Judgment, the state court made the following findings

of fact:

In the last several years preceding her death, Mrs. Brookshire lived by herself and needed

assistance in managing her day-to-day finances and other personal matters including

transportation. (Judgment ¶ 16). On March 20, 2003, the Debtor drove Mrs. Brookshire to an

attorney's office and caused her to sign a power of attorney making the Debtor her attorney-in-

fact. (Judgment ¶ 13). On that same day, the Debtor caused Mrs. Brookshire to execute a new

will in which she named the Debtor as executor of her estate and devised nearly all of her

property to the Debtor. [1]  (Judgment ¶ 13). From March 2003 until the date of her death, the

Debtor managed Mrs. Brookshire's financial affairs. (Judgment ¶ 16).

When the Debtor began managing Mrs. Brookshire's affairs, Mrs. Brookshire had no

---

[1] In a caveat proceeding, the Forsyth County Superior Court entered a judgment dated
September 15, 2005 finding that Mrs. Brookshire's will dated March 20, 2003 is void and of no
effect.

outstanding credit card debt. (Judgment ¶ 17). While acting as Mrs. Brookshire's attorney-in-fact, the Debtor charged at least $6,630.00 on Mrs. Brookshire's credit cards for items which were for the Debtor's sole use and to the exclusion of Mrs. Brookshire. (Judgment ¶ 17). The Debtor also used Mrs. Brookshire's income and savings as her own. (Judgment ¶ 18). She wrote checks from Mrs. Brookshire's account for clothes for herself, rent utilities, meals at restaurants, veterinary bills, tanning and salons, furniture, photographs, automobile expenses, and other items that did not benefit Mrs. Brookshire. (Judgment ¶ 18). The Debtor wrote checks for the benefit of herself that totaled $31,428.68. (Judgment ¶ 18).

The Debtor used the power of attorney and her authority as attorney-in-fact to obtain a home equity line on Mrs. Brookshire's home. (Judgment ¶ 19). The Debtor borrowed $54,952.12 from that home equity line and used the funds for her own benefit, to pay her own debts and expenses and to purchase accessories for her Hummer automobile. (Judgment ¶ 19). The Debtor also used her authority as attorney-in-fact to sell real property, owned by Mrs. Brookshire in Alleghany County, North Carolina, for $148,500.00. (Judgment ¶ 21). The Debtor used all of the sale proceeds for her own benefit to purchase a Hummer H2 for herself and pay personal debts. (Judgment ¶ 21). The Debtor used the power of attorney to access Mrs. Brookshire's safe deposit box. (Judgment ¶ 20). The Debtor took savings bonds and jewelry from the safe deposit box and used them for her own benefit. (Judgment ¶ 20).

While the Debtor used Mrs. Brookshire's assets for her own personal benefit, Mrs. Brookshire's needs were not being met and her basic expenses went unpaid. (Judgment ¶ 22). For example, the Debtor allowed Mrs. Brookshire's Meals on Wheels service to lapse, allowed her Lifeline (a device used to call for help in the event a phone cannot be reached) to lapse,

allowed her homeowner's insurance to be canceled, and failed to pay Mrs. Brookshire's property taxes. (Judgment ¶ 22). The Debtor's actions harmed Mrs. Brookshire financially and physically. (Judgment ¶ 23). Mrs. Brookshire was left alone in her home without a way to call for help, and for a period of days was unable to get out of a chair, which contributed to her final hospitalization. (Judgment ¶ 23).

Based upon its findings of fact, the state court found that the Debtor breached her fiduciary duty to her mother, Mrs. Brookshire, and converted the property of Mrs. Brookshire by exercising a right of ownership over it and excluding it from being returned to or used by Mrs. Brookshire.(Judgment ¶ 25). The state court found that the Plaintiff were entitled to a judgment for  compensatory damages in the amount of $241,514.40 and that the Debtor's actions also entitled the Plaintiffs to punitive damages in the amount of $100,000.00. (Judgment ¶ 26, 27).

On April 12, 2005, the Debtor filed a petition for relief under Chapter 7 of the United States Bankruptcy Code.  On May 5, 2005, the Plaintiffs filed the present adversary proceeding seeking relief under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6).  The Plaintiffs filed an amended complaint on June 1, 2005 to add Edwin H. Ferguson, Jr., the Chapter 7 Trustee.  The court entered an order denying the Debtor's motion to dismiss on June 21, 2005 and the Plaintiffs now seek summary judgment.

## STANDARD FOR SUMMARY JUDGMENT

The standard for summary judgment is set forth in Fed. R. Civ P. 56, which is made applicable to this proceeding by Bankruptcy Rule 7056, and provides that the movant will prevail on a motion for summary judgment if  "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no

4

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330 (1986). The movant has the initial burden of establishing that there is an absence of any genuine issue of material fact, and all reasonable inferences must be drawn in favor of the nonmoving party. <u>Celotex</u> at 330. Once the moving party satisfies this initial burden, the nonmoving party must present some evidence of a genuine issue of material fact. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). If the nonmoving party responds satisfactorily, the motion for summary judgment shall be denied, and the case proceeds to trial. However, "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." <u>Id</u>. at 249 (citations omitted).

## CONCLUSIONS OF LAW

### A. *Res judicata* and collateral estoppel

The Debtor does not dispute that there are no genuine issues of material fact in this matter, but rather contends that the Plaintiffs' attempt to establish findings of fact and conclusions of law other than those included in the State Court Judgment is barred by *res judicata* and collateral estoppel. *Res judicata*, also know as claim preclusion, has limited application to dischargeability proceedings. In <u>Brown v. Felsen</u>, 442 U.S. 127, 99 S.Ct. 2205 (1979), the Supreme Court held that the bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of a judgment debt, and that *res judicata* does not apply.

Collateral estoppel, or issue preclusion, is applicable in bankruptcy dischargeability proceedings. When parties have previously litigated an issue in state court, the rules of the

5

jurisdiction that entered the previous judgment shall govern collateral estoppel based upon that judgment.  See In re Catt, 368 F.3d 789 (7th Cir. 2004).  Pursuant to North Carolina law, four factors must be present before collateral estoppel can be asserted: (1) the issues sought to be precluded must be the same as those involved in the prior action, (2) the issues must have been raised and actually litigated in the prior action, (3) the issues must have been material and relevant to the disposition of the prior action, and (4) the determination of the issues in the prior action must have been necessary and essential to the resulting judgment.  State v. Summers, 351 N.C. 620 (2000).

        In this case, the state court did address certain issues and facts which are material to the present dischargeability proceeding.  Oddly, it is the Debtor who is asserting collateral estoppel as a defense, when, in fact, the application of collateral estoppel results in a finding for the Plaintiffs as a matter of law.  The state court found the Debtor liable for the conversion of Mrs. Brookshire's property.  The tort of conversion is comprised of  (1) the unauthorized assumption and exercise of the right of ownership; (2) over the goods or personal property; (3) of another; (4) to the exclusion of the rights of the true owner. See  Estate of Graham v. Morrison, 168 N.C. App. 63, 72, 607 S.E.2d 295, 302 (2005).   The state court also found the Debtor liable for breaching the fiduciary duty imposed by the power of attorney. Pursuant to North Carolina law, encompassed within the state court's finding that the Debtor breached her fiduciary duty is a finding of fraud. Miller v. First Nat'l Bank of Catawba County, 234 N.C. 309, 316, 67 S.E.2d 362, 367 (1951) (explaining that a breach of fiduciary obligation is fraudulent because of  "its tendency to deceive, to violate confidence"); Estate of Smith v. Underwood, 487 S.E.2d 807, 812 (N.C.App. 1997); Stone v. Martin, 355 S.E.2d 255, 259, *disc. review denied,* 320 N.C. 638, 360

6

S.E.2d 105 (N.C. 1987) ("Fraud exists when there is a breach of a fiduciary duty.").

The court finds that these issues were actually litigated and were material and relevant to the disposition of the prior action. Often, in the case of a default judgment, issues raised in the complaint may not actually be litigated; however, in this case, the state court made findings and conclusions after consideration of evidence and arguments of counsel. Therefore, to the extent that the issues of whether the Debtor converted property, breached the power of attorney, and acted fraudulently arise in this dischargeability proceeding, the parties are precluding from relitigating them.

In addition to finding the Debtor liable for conversion and breach of her fiduciary duty, the state court found that the Debtor's conduct warranted the award of punitive damages to the Plaintiffs. Punitive damages are not recoverable as a matter of right but are always within the discretion of the trier of fact. Hunter v. Spaulding, 388 S.E.2d 630, 635 (N.C.App. 1990). North Carolina law requires proof of malice or other aggravating factor constituting fraud before punitive damages may be awarded. Hornby v. Pennsylvania Nat. Mut. Cas. Ins. Co., 335 N.C. App. 335 (N.C. App. 1985). The North Carolina Supreme Court has stated, "Punitive damages are never awarded, except in cases when there is an element either of fraud, malice, ... or other causes of aggravation in the act or omission causing the injury." Oestreicher v. Stores, 225 S.E.2d 797, 808 (N.C. 1976) (citations omitted). In this matter, the state court, acting as the trier of fact, decided that the Debtor's breach of fiduciary duty and conversion were willful and intentional. (Judgment ¶ 27). Because the state court's finding that the Debtor's actions were willful and intentional was material and relevant to the disposition of the prior action, the parties are precluding from relitigating that issue in this proceeding.

7

**B. Dischargeability under § 523(a)(6)**

The Plaintiffs are seeking to except the debt created by the State Court Judgment from discharge pursuant 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) or 523(a)(6).  Based upon the findings already made in the State Court Judgment, this court finds that the debt should be held nondischargeable under §523(a)(6).   Section 523(a)(6) provides that an individual debtor will not be discharged from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity. 11 U.S.C. § 523(a)(6). The term "willful," as used in section 523(a)(6), requires an intentional injury, not merely an intentional act that results in injury. See Kawaauhau v. Geiger, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). A debtor must not only have intended to exercise control over the plaintiffs' property, but have done so intending the consequent injury to the plaintiff's interest in the property.  Id.  The requirement that the conduct be "malicious," however, does not require a showing of ill will.   See In re Stanley, 66 F.3d 664, 667 (4th Cir.1995).   Rather, an injurious act done deliberately and intentionally, in knowing disregard of the rights of another, is sufficiently willful and malicious for the purposes of section 523(a)(6).  Id.

Conversion can constitute a willful and malicious injury to property for the purpose of § 523(a)(6). See  Haemonetics Corp. v. Dupre, 238 B.R. 224, 229 (D. Mass. 1999) (wife's knowing use of embezzled funds to support extravagant lifestyle constituted conversion which was sufficient to support a nondischargeability complaint under § 523(a)(6)); In re Granati, 270 B.R. 575, 591 (Bankr. E.D. Va. 2001) (finding that debtor's redirection of annuity payments to personal bank account, in violation of rights she had granted to creditor under valid equitable assignment of annuity proceeds, qualified as "conversion" of creditor's property, and constituted

8

a willful and malicious injury to property for the purpose of § 523(a)(6)); In re Wong, 291 B.R. 266, 280 (Bankr. S.D.N.Y. 2003) (Allegations in complaint that debtor had removed funds to prevent bank from collecting them were sufficient to state claim under § 523(a)(6)).

Here, the state court has already established that the Debtor's actions constituted conversion, therefore the parties are collaterally estopped from relitigating that issue.  In addition, when awarding punitive damages, the state court determined that Debtor's  actions were willful and intentional. The state court specifically found that the Debtor used Mrs. Brookshire's assets for her own personal benefit, and that the Debtor's actions harmed Mrs. Brookshire financially and physically.  This court finds that both the findings of fact and conclusions of law in the State Court Judgment easily support a finding that the Debtor acted with the requisite willfulness and malice to deny dischargeability of the State Court Judgment under § 523(a)(6).  In fact, the court believes that the circumstances of this case embody exactly what § 523(a)(6) was designed to prevent, that is, the case of a debtor, who's actions were so egregious as to warrant the award of $100,000 in punitive damages by a state court, using the bankruptcy court as a shield.

Because the court finds that the State Court Judgment is nondischargeable pursuant to § 523(a)(6), it need not address either § 523(a)(2)(A) or (a)(4).  Based upon the foregoing, the court finds that the Debtor's indebtedness to the Plaintiffs by virtue of the State Court Judgment in the amount of $341,514.40, plus interest at the legal rate from August 13, 2004, is excepted from discharge pursuant to § 523(a)(6).

# SERVICE LIST

Bryan Gates
Suite 100
One North Marshall Street
Winston-Salem, NC 27101

William W. Walker
Rebecca Smitherman
110 Oakwood Drive
Suite 300
Winston-Salem, NC 27103

Edwin H. Ferguson, Jr.
P.O. Box 444
Concord, NC 28025-0444

Michael D. West
P. O. Box 1828
Greensboro, NC 27402